IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. CASE NO. 2:24-cr-211-ECM |
| | ) | [WO] |
| MICHELLE DENISE MCINTYRE | ) | |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

On June 4, 2024, a Middle District of Alabama grand jury returned a thirteen-count indictment against Defendant Michelle Denise McIntyre ("McIntyre"). (*See* doc. 1).[1] McIntyre devised a scheme to defraud and obtain money from the Small Business Administration ("SBA") under false pretenses by submitting applications for three COVID-19 pandemic relief programs, including the: (1) Paycheck Protection Program ("PPP"); (2) Economic Injury Disaster Loan [Program] ("EIDL"); and (3) Restaurant Revitalization Fund ("RRF"). (*See e.g.*, *id.* at 1–7, paras. 1–23).

On December 19, 2024, McIntyre pled guilty to two counts of the thirteen-count indictment: (1) wire fraud, in violation of 18 U.S.C. § 1343 (Count 4); and (2) money laundering, in violation of 18 U.S.C. § 1957 (Count 6).[2] (*See* docs. 1, 33). On April 2, 2025, the Court imposed a 114-month sentence on Counts 4 and 6 to be served

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[2] As part of McIntyre's plea agreement, the Government agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) to move to dismiss Counts 1–3, 5, and 7–13 at sentencing. (Doc. 33 at 4, para. 5). Upon the Government's oral motion, the Court dismissed Counts 1–3, 5, and 7–13 at sentencing. (*See* doc. 64; *see also* doc. 87 at 49:11–15).

concurrently. (Doc. 72 at 2). At McIntyre's sentencing hearing—after her sentence was imposed—she objected to the Court's restitution determination. (*See* doc. 87 at 44:23–45:3, 45:11–22). As explained more fully below, McIntyre's rationale for challenging the Court's authority to order restitution has shifted. (*See* docs. 91, 97, 107).

Due to McIntyre's objection, the Court withheld judgment on the amount of restitution owed and set the matter for a "hearing to give the parties an opportunity to investigate." (Doc. 69 at 1). The Court held a hearing (docs. 94, 114), considered the parties' briefing (docs. 91, 92, 97, 98, 106, 107), and reviewed evidence (doc. 113).[3] The parties' dispute centers on five main issues, whether: (1) the Mandatory Victims Restitution Act of 1996 ("MVRA") temporally bars a restitution order; (2) an award of restitution must be tied to the counts of conviction; (3) the Government has proven by a preponderance of the evidence the loss amount in this case; (4) there are additional identifiable victims; and (5) the Court can award restitution to a victim identified after the sentencing hearing.

After careful consideration of the record, the parties' briefing, and applicable case law, the Court finds that McIntyre must pay $775,373.52 in restitution.[4] As explained

---

[3] On July 25, 2025, the Government filed an additional position statement, which included citations to various "supporting documents" produced in discovery. (Doc. 106 at 1). The Court ordered the Government to file unredacted versions of the supporting documents under seal. (Doc. 108). The Government complied and conventionally filed these documents via USB. (*See* doc. 113). Because the filed documents are sealed, the Court will refer to them by their Bates numbers. (*See e.g.*, 2021R00212-0002292 at 1).

[4] The Court will enter an "amended judgment in a criminal case" in accordance with this Memorandum Opinion and Order. (*See* doc. 72 at 6; *see also infra* Section V).

below, McIntyre must make restitution of $755,850.08 to the SBA and $19,523.44 to Prestamos CDFI ("Prestamos").[5]

## II. PROCEDURAL HISTORY

### A.    Presentence Events

### 1.    Indictment

On June 4, 2024, McIntyre was named in a thirteen-count indictment. (Doc. 1). McIntyre was charged with various counts of wire fraud (Counts 1–4, 8–13) and money laundering (Counts 5–7). (Doc. 1 at 3–11, para. 12–33). McIntyre's charged conduct fell into three buckets. First, McIntyre submitted fraudulent applications to the SBA to enrich herself. (*See e.g.*, *id.* at 6, para. 22). Second, McIntyre submitted applications as a preparer for members of the public. (*See e.g.*, *id.* at 9–10, para. 32). McIntyre "advertised her pandemic relief application services on social media and . . . routinely charged $200 per application, then required successful applicants to pay her an additional fee, up to half of the money they received." (*Id.* at 8, para. 28). Third, McIntyre used proceeds obtained by wire fraud to purchase property, including a 2018 GMC Yukon. (*Id.* at 7–8, para. 25).

Specifically, in Count 4, the Government alleged that McIntyre "devised and intended to devise a scheme to defraud the [SBA], and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises." (*Id.* at

---

[5] The Government seeks a total restitution award of $775,373.52. (*See* doc. 92 at 10). However, in review of the Government's proposed figure, the Court identified a clerical error regarding a "PPP loan to R.S." (*See id.* at 8). The total restitution sought for this loan is listed as $23,261.01. However, the total loan balance is $23,261.02—a difference of *one penny*. (*See* doc. 92-10). Because the reporting documents confirm that the SBA was harmed and is entitled to restitution of $23,261.**02**, the Court will include that amount in its order of restitution. (*See id.*).

6, para. 21).  Further, in Count 6, the Government charged that McIntyre "knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000." (*Id.* at 7, para. 25).

### 2.    Plea Agreement

On December 19, 2024, McIntyre pled guilty to Counts 4 and 6 of the indictment pursuant to 18 U.S.C. §§ 1343 and 1957. (Doc. 33 at 1–2).  In Count 4, McIntyre admitted to making false representations on an RRF application submitted to the SBA. (*Id.* at 9–10, para. 31).  The SBA later approved McIntyre's application and disbursed $131,478.76 in grant funding. (*Id.*).  Relatedly, in Count 6, McIntyre admitted to withdrawing $44,000 of the RRF funds from her credit union account, which were "derived from [McIntyre's] wire fraud." (*Id.* at 10).

Besides admitting the allegations charged in the indictment, McIntyre "agree[d] to pay all fines and restitution imposed by the Court to the Clerk of the Court" and acknowledged "the Court's authority to order restitution." (*Id.* at 5, para. 14; *id.* at 13, para. 43).  The plea agreement plainly contemplates that the statutory penalties for Counts 4 and 6 include "order[s] of restitution." (*Id.* at 1–2).  The parties did not agree regarding the: (1) number of identified victims; or (2) amount of restitution.[6]

---

[6] McIntyre's plea agreement also contains a "waiver of appeal and collateral attack." (Doc. 33 at 10–11, paras. 33–34; *see also* doc. 87 at 49:24–25).

### 3.    Presentence Investigation Report

The Presentence Investigation Report ("PSI") documented McIntyre's personal history and characteristics and detailed her criminal conduct. McIntyre filed SBA applications associated with COVID-19 relief programs. (Doc. 68 at 5–6, paras. 6–16). McIntyre submitted SBA applications in two ways: (1) personally as the "applicant" or borrower; and (2) as the "preparer" for members of the public—often associated with McIntyre's company, "Finesse Services."[7] (*See e.g.*, doc. 68 at 5–6, paras. 9–10). McIntyre "filed SBA applications on behalf of clients using information provided by the clients." (*Id.* at 6, para. 17). McIntyre charged $200 to submit EIDL applications and between $75 to $100 to file PPP applications.[8] (Doc. 68 at 6, para. 17). McIntyre performed additional client services "such as bookkeeping, taxes, and amendments[,] in addition to the loan applications." (*Id.*). McIntyre submitted 217 false EIDL loan applications for her clients, which were denied. (*Id.* at 8, para. 24).

McIntyre lodged three objections to the PSI—unrelated to restitution and which do not impact the restitution calculation in this case.[9] McIntyre did not object to the facts contained in the PSI or to Paragraphs 23, 24, or 25 which calculated financial loss. (Doc.

---

[7] The record establishes that McIntyre prepared most applications submitted in connection with Finesse Services. Notably, two EIDL applications prepared by Finesse Services (without McIntyre) "resulted in funded EIDL advances totaling $30,000." (Doc. 92-4 at 3). These EIDL advances are not included in the PSI's actual loss or restitution calculations. (*See* doc. 68 at 7–8, para. 23; *see also* doc. 92-2 at 1).

[8] The record lacks evidence regarding whether McIntyre charged fees when preparing RRF applications. (*See* doc. 68 at 6, paras. 16–17).

[9] The Court overruled each of McIntyre's objections at her April 2, 2025 sentencing hearing. (*See* doc. 87 at 18:23–21:15).

68 at 7–8, paras. 23–25). McIntyre's conduct resulted in $732,404.76 of actual loss and $14,671,008.50 of intended loss.[10] (Doc. 68 at 7–9, paras. 23–25). In the PSI, probation calculated that the SBA suffered a $774,774.23 loss.[11] (Doc. 68 at 9, para. 27); *see also United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) ("[T]he amount of loss (for purposes of offense level calculation) is *either* the actual or intended loss while the restitution amount must be the actual loss suffered by the victim." (emphasis and parenthetical in original). McIntyre failed to object to Paragraph 102 of the PSI which states that "restitution in the total amount of $774,774.23 *shall be ordered* in this case."[12] (Doc. 68 at 21, para. 102) (emphasis added).

## B.    Sentencing Hearing

On April 2, 2025, the Court sentenced McIntyre to a 114-month term of imprisonment on Counts 4 and 6 to be served concurrently. (Doc. 72 at 2). The Court accepted McIntyre's plea agreement, wherein she "agree[d] to pay all fines and restitution imposed by the Court to the Clerk of the Court" and acknowledged "the Court's authority to order restitution." (Doc. 33 at 5, para. 14; *id.* at 13, para. 43; *see also* doc. 87 at 4:18).

---

[10] The Sentencing Guidelines define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense" and "intended loss" as the "pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1(b)(1)(C)(i), (ii).

[11] The Sentencing Guidelines exclude "[i]nterest of any kind, finance charges, late fees, [and] penalties" when determining "loss"—the greater of actual loss or intended loss. U.S.S.G. § 2B1.1, cmt. n.3(C)(i). Contrastingly, "restitution may include prejudgment interest while the amount of loss cannot." *United States v. Huff*, 609 F.3d 1240, 1247 n.4 (11th Cir. 2010). The inclusion of interest and finance charges explains the delta between the Sentencing Guidelines calculation of loss and the restitution amount.

[12] The Government now seeks a total restitution award of $775,373.52, consistent with the amounts listed in the PSI and increased to account for "adjusted interest figures." (Doc. 92 at 3, 6–10).

The Court adopted the factual statements contained in the PSI and ordered McIntyre to "make restitution in the total amount of $774,774.23 to the Small Business Administration, which is due immediately." (Doc. 87 at 44:16–18).

McIntyre's counsel then objected that the imposed sentence "is neither procedurally nor substantively reasonable . . . as well as the restitution not being tied to the offenses of conviction." (*Id.* at 44:25–45:3). Specifically, although McIntyre "d[id] not disagree with how the Court calculated [the restitution figure] . . . [she] believe[s] that it's not tied to Counts 4 and 6." (*Id.* at 46:12–14). At sentencing, McIntyre argued that the Court's authority to order restitution is limited to the counts of conviction—wire fraud (Count 4) and money laundering (Count 6).[13] After hearing from both parties, the Court "h[e]ld over . . . the amount of restitution" and later vacated the restitution order "to give [the parties] time to" discuss McIntyre's objection. (Doc. 87 at 48:14–18).

## C.    Post-sentencing Events

The Court set this matter for a restitution hearing on June 30, 2025—ninety days after McIntyre's April 2, 2025 sentencing hearing.[14] (Doc. 69 at 1). The parties filed position statements two weeks before the scheduled restitution hearing. (*See* docs. 91, 92). In her position statement, McIntyre did not rely on her objection that the restitution order must be tied to the counts of conviction; instead, McIntyre argued that "the government

---

[13] At her sentencing hearing, McIntyre contended that the restitution amount should be $175,478.76. (Doc. 87 at 47:1–3). McIntyre reached this figure by adding the amounts charged in Counts 4 and 6 of the indictment. (*See* doc. 1 at 7, para. 23; *id.* at 7–8, para. 25) ((ACH payment of $131,478.76 (Count 4) and $44,000 (Count 6)).

[14] Shortly after McIntyre's sentencing hearing, her Attorney Christine Freeman withdrew from this case. (*See* doc. 75).

has failed to meet its statutory obligations under the MVRA, and it is appropriate for this Court to deny the government's claim for restitution" in its entirety. (Doc. 91 at 2). McIntyre argued that "[b]ased on the government's representations, there are multiple victims in this case." (*Id.* at 4).  The Court will analyze McIntyre's position in more detail below.

Due to circumstances beyond the Court's and parties' control, the restitution hearing was reset for July 11, 2025.[15] (Doc. 94 at 1, para. 1).  Before the restitution hearing, the Court ordered responsive briefing. (*Id.* at 1, paras. 2–3).  The parties timely filed responsive briefing before the restitution hearing. (*See* docs. 97, 98).  On July 11, 2025, the parties appeared for a nearly two-hour hearing "on the issue of the amount of restitution due" in this case. (Doc. 114 at 2:6–8).

After the hearing, the Court ordered the parties to "meet and confer regarding the amount of restitution owed in this case on or before July 25, 2025." (Doc. 102 at 1, para. 1).  The parties were unable to settle the restitution issue, and subsequently filed additional briefing. (*See* docs. 106, 107).  Further, the Government submitted evidence under seal regarding the number of victims in this case. (*See* doc. 113; *see supra* n.3).  The Court being fully briefed, now considers the parties' positions on the amount of restitution owed in this case.

---

[15] McIntyre was unable to attend the hearing due to a miscommunication regarding her transport from a Federal Bureau of Prisons facility. (*See* doc. 101 at 1; *see also* doc. 114 at 17:10–17).

### III.  STANDARDS OF REVIEW

#### A.    Restitution

"The burden of proof for establishing restitution is upon the government by a preponderance of the evidence." *United States v. Buchanan*, 146 F.4th 1342, 1358 (11th Cir. Aug. 12, 2025) (quoting *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997) (per curiam)); *see also* 18 U.S.C. § 3664(d).  "An award of restitution must be based on the amount of loss actually caused by the defendant's conduct." *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001).  "However, 'the government need not calculate the victim's actual loss with laser-like precision, but may instead provide a 'reasonable estimate' of that amount.'" *United States v. Gladden*, 78 F.4th 1232, 1249 (11th Cir. 2023) (quoting *United States v. Martin*, 803 F.3d 581, 595 (11th Cir. 2015)).  "[T]he purpose of restitution is not to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Young*, 108 F.4th 1307, 1319 (11th Cir. 2024) (quoting *Martin*, 803 F.3d at 594).

#### B.    Mandatory Victims Restitution Act

"A federal district court has 'no inherent authority to order restitution, and may do so only as explicitly empowered by statute.'" *United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004) (quoting *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996)).  The MVRA "requires the district court to grant restitution to all victims once a defendant is convicted of 'any offense . . . in which an identifiable victim or victims has suffered a

. . . pecuniary loss.'" *United States v. Edwards*, 728 F.3d 1286, 1291 (11th Cir. 2013) (quoting 18 U.S.C. § 3663A(c)(1)(B)).

Relevant here, the MVRA mandates full restitution when: (1) a defendant commits "an offense against property under [Title 18] . . . including any offense committed by fraud or deceit;" (2) "in which an identifiable victim or victims has suffered a . . . pecuniary loss." *See* 18 U.S.C. § 3663A(a)(1), (c)(1). The MVRA defines a "victim" as follows:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). "Thus, a victim must have suffered harm, and the defendant must have proximately caused that harm." *Martin*, 803 F.3d at 593. "[T]he term 'victim,' as used in the MVRA, includes the government." *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010).

Although the MVRA does not define "offense against property," the Eleventh Circuit has held that "[t]he MVRA obligates district courts to order restitution in certain cases, including *wire fraud*." *Dickerson*, 370 F.3d at 1335–36 (emphasis added); *see also United States v. Collins*, 854 F.3d 1324, 1331 (11th Cir. 2017) (collecting cases). Further, other Courts of Appeals have held that money laundering convictions under 18 U.S.C. § 1957 constitute offenses against property and are thus "subject to the MVRA."[16] *United States v. Luis*, 765 F.3d 1061, 1066 (9th Cir. 2014); *see also United States v. Diaz*, 245

---

[16] McIntyre does not contend that the MVRA does not apply to her conduct. Rather, McIntyre objects to the Court ordering restitution on other grounds.

F.3d 294, 296, 312 (3d Cir. 2001); *United States v. Polichemi*, 219 F.3d 698, 707, 714 (7th Cir. 2000).

"[A] criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." *Dickerson*, 370 F.3d at 1341. "A district court may not order a defendant to pay restitution for criminal conduct 'unrelated to the offense of conviction.'" *United States v. Valladares*, 544 F.3d 1257, 1270 (11th Cir. 2008) (per curiam) (citing *Dickerson*, 370 F.3d at 1341). "However, the amount of loss does not necessarily equal the amount of restitution to be paid because '[a] defendant's culpability will not always equal the victim's injury.'" *Huff*, 609 F.3d at 1247 (quoting *United States v. Catherine*, 55 F.3d 1462, 1465 (9th Cir. 1995)).

"[W]here a defendant is convicted of a crime of which a scheme is an element, the district court must, under 18 U.S.C. § 3663A, order the defendant to pay restitution to all victims for the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside the statute of limitations." *Dickerson*, 370 F.3d at 1342. "[R]estitution orders for conduct closely related to the offense of conviction are appropriate under either [18 U.S.C.] § 3663 or [18 U.S.C.] § 3663A(a)(2), in addition to the specific conduct for which the defendant was convicted. *United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011) (per curiam). The Eleventh Circuit has held that under the MVRA "restitution for . . . wire fraud is not 'limited to the specific act of fraud underlying the mailing or use of the wires for which the defendant is convicted,' but is available for any victim of 'the entire scheme or artifice to defraud

furthered by the . . . use of the wires.'" *United States v. Foley*, 508 F.3d 627, 635 (11th Cir. 2007) (citation omitted).

## IV.  DISCUSSION

McIntyre makes five arguments regarding restitution.[17]  First, McIntyre argues that the MVRA temporally bars this Court from ordering restitution.  Second, she contends that even if the Court could order restitution, any restitution order must be tied to the counts of conviction—Counts 4 and 6.  Third, McIntyre argues that the Government has not proven the actual loss amount by a preponderance of the evidence.  Fourth, McIntyre contends that the Government's failure to fully investigate her case prevents this Court from ordering *any* amount of restitution.  Fifth, and finally, McIntyre posits that there are additional victims, which bars the Court from ordering restitution.  The Court addresses McIntyre's arguments in turn.

### A.    Objection 1:  MVRA's Temporal Bar

Under the MVRA, "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, . . . the [C]ourt shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).  The Court set a restitution hearing for June 30, 2025—ninety days after McIntyre's April 2, 2025 sentencing hearing. (*See* doc. 69 at 1).  Due to circumstances beyond the Court's control, the restitution hearing was reset for July 11, 2025—outside the MVRA's

---

[17] McIntyre's arguments have evolved at each stage—before, during, and after sentencing.  Despite this evolution, the Court addresses all of McIntyre's restitution objections in Section IV.

ninety-day window. *See* 18 U.S.C. § 3664(d)(5); *see supra* n.15.  The Court received additional briefing and evidence in August 2025. (*See* docs. 107, 113).

At the July 11, 2025 restitution hearing, McIntyre argued that the MVRA statutorily bars this Court from ordering restitution more than ninety days after sentencing. 18 U.S.C. § 3664(d)(5). (*See* doc. 114 at 5:19–22).  In *Dolan v. United States*, the United States Supreme Court held "that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least whe[n] . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." 560 U.S. 605, 608 (2010) (parenthetical in original); *see also United States v. Rodriguez*, 751 F.3d 1244, 1260 (11th Cir. 2014).

Here, the Court made clear before the deadline's expiration that it would order restitution.  At sentencing the Court stated, "I'm going to hold over, then, the *amount* of restitution. . . . So to the extent that there is an objection as to the *amount* of restitution, . . . I'm going to set that out for a separate hearing." (Doc. 87 at 48:14–15, 22–24) (emphases added).  McIntyre's April 7, 2025 judgment includes language that "[t]he determination of restitution is deferred until 6/30/2025." (Doc. 72 at 6).  Further, on June 30, 2025, the Court made clear that it would extend the time to finalize the restitution order. (Doc. 101 at 1).  Thus, although the Court is outside the MVRA's ninety-day window, the Court retains the power to order restitution. *See Dolan*, 560 U.S. at 611 ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution.").  Because the Court retains the authority to order restitution, McIntyre's objection is due to be overruled.

13

**B.      Objection 2:  Tied to Offenses of Conviction**

McIntyre first objected to the amount of restitution at the conclusion of her April 2, 2025 sentencing hearing.  McIntyre argued that she was "before the Court convicted of Counts 4 and 6, and restitution should be tied to those counts." (Doc. 87 at 45:17–21).  For three independent reasons, McIntyre's objection is due to be overruled.

First, McIntyre affirmatively abandoned her argument that the restitution order must be tied to the two counts of conviction.  The following exchange at the July 11, 2025 restitution hearing confirms McIntyre's abandonment:

> The Court:  Have you abandoned . . . McIntyre's initial argument that she only should pay restitution for the two counts of conviction?
>
> [McIntyre's Counsel]:  Your Honor, I believe there's case law that says the Court can order additional restitution.
>
> The Court:  So[,] you are abandoning that argument?
>
> [McIntyre's Counsel]:  Yes, Your Honor.

(Doc. 114 at 7:8–14).

Second, even if McIntyre did not abandon this argument, it is foreclosed by Eleventh Circuit precedent.  McIntyre pled guilty to wire fraud (Count 4) and money laundering (Count 6).  McIntyre's plea under 18 U.S.C. § 1343 established that "she (1) 'participated in a *scheme* or artifice to defraud; (2) with the intent to defraud; and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud.'" *See Martin*, 803 F.3d at 588 (emphasis added) (quoting *United States v. Williams*, 527 F.3d 1235, 1240 (11th Cir. 2008)).  Because McIntyre pled guilty to a "crime of which a scheme is an element," this Court "must, under 18 U.S.C. § 3663A, order

14

[McIntyre] to pay restitution to all victims for the losses they suffered from [her] conduct in the course of the scheme." *Dickerson*, 370 F.3d at 1342.  Further, "when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, the court may order restitution for acts of related conduct for which the defendant was not convicted." *Edwards*, 728 F.3d at 1293 (citing *Dickerson*, 370 F.3d at 1339).

At sentencing, the Court adopted the factual statements contained in the PSI, including the loss figures for:  (1) PPP loans; (2) McIntyre's RRF loan; (3) EIDL Advance Funds; (4) EIDL Loans; and (5) lender fees and interest. (*See* doc. 87 at 21:24–22:4; *see also* doc. 68 at 7–8, para. 23).  McIntyre specifically targeted COVID-19 pandemic relief programs and submitted fraudulent applications, which caused the SBA to suffer substantial financial losses. (*See* doc. 68 at 5–8, paras. 6–24).  At sentencing the Court described McIntyre's scheme as "very sophisticated." (Doc. 87 at 38:16–17).  The Court noted that McIntyre's conduct involved a common purpose—"[McIntyre] essentially stole from the government . . . [McIntyre] went out and . . . found other people, and . . . impressed them with [her] intellect, and . . . increased the fraud exponentially." (*Id.* at 39:22–23, 40:2–7).

The indictment also charged McIntyre with additional counts of wire fraud related to false PPP applications (Count 1) and EIDL applications (Counts 2–3, 8–13). (Doc. 1 at 3–5, paras. 12–19; *id.* at 9–11, paras. 30–33).  McIntyre concedes that "because of the overall *fraud scheme*, it can be shown that . . . McIntyre held herself out to the public . . .

whereby she collected fees based upon misrepresentations that she made to her clients." (Doc. 107 at 3) (emphasis added).

Here, although McIntyre's role varied her conduct involved the same victim—the SBA—who disbursed or administered the funds. Additionally, McIntyre's conduct involved the same *modus operandi*—submitting false information in the hopes of defrauding the SBA. Therefore, because McIntyre: (1) pled guilty to a crime (wire fraud) of which a scheme is an element; and (2) that scheme involved the same victim and similar conduct, the Court must order McIntyre to pay restitution to Prestamos and the SBA for "acts of related conduct for which [she] was not convicted." *See Edwards*, 728 F.3d at 1293 (citation omitted).

Third, and finally, outside of her counsel's statement at sentencing, McIntyre has not briefed or provided legal authority in support of her objection. Thus, for three independent reasons, McIntyre's objection—to the extent it was not abandoned or waived—is due to be overruled.

## C.    Objection 3:  Actual Loss Amount

McIntyre raises an untimely objection to the Court's calculation of the actual loss amount. (*See* doc. 107 at 7).  For the reasons outlined below, McIntyre's objection is due to be overruled.

At McIntyre's April 2, 2025 sentencing hearing, she did not object to the factual findings underpinning the Court's actual and intended loss calculations.  When arguing in support of her motion for a downward variance, McIntyre's counsel specifically cited the disparity between the uncontested loss amount of "under [$]800,000" and the intended loss.

(*See* doc. 87 at 23:5–14).  After McIntyre's sentence was imposed, McIntyre's counsel was clear that her client did not, "disagree with how the Court calculated that number. [McIntyre] believe[s] that it's not tied to Counts 4 and 6." (*Id.* at 46:12–14).  "That number" refers to the amount of uncontested loss identified in the PSI—$774,774.23. (Doc. 68 at 21, para. 102).  Months later, during the July 11, 2025 restitution hearing McIntyre's counsel did not object to the calculation of actual loss.

> The Court:    [D]o you refute the amount of restitution that the government is putting forward, or is it your position they're barred because we are past the 90 days under the statute from any restitution?
>
> [McIntyre's Counsel]:      Your Honor, again, the position is that they have not followed the statutory obligations under the MVRA in order to present this Court with evidence of restitution. Therefore, any evidence of restitution coming in front of the Court today for a restitution order would be - - would be outside the time line allowed by the MVRA.

(Doc. 114 at 11:5–14).

For a second time during the restitution hearing, the Court probed the scope of McIntyre's objections:

> The Court:  [I]t sounds from the arguments of both sides that you're taking the position this is an all-or-nothing proposition. You're not disputing the amount of restitution that the government is seeking. . . .
>
> [McIntyre's Counsel]:  Yes, Your Honor.

(*Id.* at 16:16–17:2).

Despite multiple opportunities to inform the Court of her basis for objecting to restitution, on August 1, 2025, McIntyre submitted additional briefing in which she stated, "McIntyre *persists* in her objection that the actual loss amount sustained by the SBA as calculated by the government is not correct and has not been proven by a preponderance

of the evidence."[18] (Doc. 107 at 7) (emphasis added).  But the record reflects that McIntyre failed to object to the actual loss amount before, during, and after her sentencing hearing.

The Court—at sentencing—adopted the factual findings in the PSI. (*See* doc. 87 at 21:24–22:8).  McIntyre did not object to the actual loss calculation and thereby "waived any objections and effectively admitted to the recited facts for sentencing purposes." *United States v. Harris*, 941 F.3d 1048, 1053 (11th Cir. 2019).  "[C]hallenges to the facts contained in the PSI must be asserted with specificity and clarity . . . .  Otherwise, the objection is waived." *United States v. Bennett*, 472 F.3d 825, 832–34 (11th Cir. 2006) (per curiam).

Even if McIntyre did not waive this untimely objection, the Government established the amount of restitution by a preponderance of the evidence. *See Buchanan*, 146 F.4th at 1358.  McIntyre has been on notice since at least March 26, 2025, that the Government intended to seek $774,774.23 in restitution. (*See* doc. 50 at 10–14).  The Government specifically listed:  (1) the name of the harmed party; (2) the harmed party's address; (3) the loan number; (4) the program associated with the loan (PPP, EIDL, RRF); and (5) the amount owed. (*See id.*).  The PSI described in great detail McIntyre's scheme and categorized McIntyre's conduct based on her specific role:  (1) as borrower or applicant; and (2) as "preparer for other borrowers." (Doc. 68 at 7–9, paras. 23–25).  Further, after sentencing, despite the Court already adopting the factual statements in the PSI, the

---

[18] McIntyre failed to formally object to the actual loss calculation.  Despite McIntyre's failure, the Court analyzes the potential objection because McIntyre's briefing includes statements like, "[e]ven if the government can show the actual loss to the SBA"—implying that the Government did not establish the actual loss amount by a preponderance of the evidence. (*See e.g.*, doc. 91 at 2).

Government provided additional specific evidence establishing the loss amounts.[19] (*See e.g.*, docs. 92-2, 92-5).

McIntyre, without evidence, cursorily states that the loss amount is incorrect for the following reasons: (1) "at least one applicant has died"; (2) "another has maintained loan payments"; and (3) "another applicant underwent an SBA audit before her loan was approved for forgiveness."[20] (Doc. 107 at 10). McIntyre does not identify particular loans or funds that were incorrectly calculated. Without more, the Court reaffirms its findings that the Government proved by a preponderance of the evidence the loss amounts—as evidenced by the undisputed facts contained in the PSI and additional evidence produced by the Government.

Even if McIntyre had timely objected to the actual loss amounts, the Government proved the restitution amount sought by a preponderance of the evidence. Therefore, to the extent it has not been waived, McIntyre's objection to the actual loss amount is due to be overruled.

## D.    Objection 4:  MVRA Compliance

McIntyre argues that "the government has failed to meet its statutory obligations under the MVRA, and it is appropriate for this Court to deny the government's claim for

---

[19] After sentencing, the Government identified that PPP loan number "47363190-08 to T.W. was not forgiven." (Doc. 92 at 5–6). The Government seeks restitution for "Prestamos CDFI, the lender." (*Id.* at 6). The Court addresses McIntyre's objection to awarding Prestamos restitution in Section IV.E.

[20] To the extent McIntyre argues that the SBA recovered any amounts to offset her restitution amount, she has failed to provide any documentary evidence to support these assertions. McIntyre bears the burden under 18 U.S.C. § 3664(j)(2) to prove the value of any purported offset. *See United States v. Parker*, 927 F.3d 374, 381–82 (5th Cir. 2019). She has not met her burden, and this objection—to the extent McIntyre makes it—is overruled.

restitution." (Doc. 91 at 2). McIntyre argues that the Government failed to seek restitution or adequately determine if restitution was owed to McIntyre's clients. (*See id.* at 4) ("The government has presented more than once to this Court that . . . McIntyre charged fees to each applicant with each loan application submitted to the SBA."). McIntyre contends that the Government failed "to identify and contact the potential victims of . . . McIntyre's scheme." (Doc. 114 at 6:6–16). "The restitution award must be the full amount of the victim's loss that was actually and proximately caused by the defendant's conduct, regardless of the defendant's current or anticipated ability to pay." *Collins*, 854 F.3d at 1329.

McIntyre presents the Court with a novel theory: she argues, as the Defendant, that there may be additional victims of her criminal scheme for which the Government has not accounted. McIntyre contends that any clients that paid her a fee to submit an EIDL application and were subsequently denied could be victims under the MVRA. Those *potential* victims (McIntyre's "clients") are not government entities. Under McIntyre's reading of the MVRA, because there are potential individual victims, those hypothetical victims must "receive full restitution before the United States receives any restitution." 18 U.S.C. § 3664(i). Here, McIntyre contends that the Government failed to adequately investigate the scope of her fraud. Therefore, according to McIntyre, because the hypothetical victims were not properly investigated, and any non-government victim receives priority, this Court is barred from ordering any restitution at all.

McIntyre's interpretation is contrary to the MVRA's purpose—"to ensure that victims, to the greatest extent possible, are made whole for their losses." *Huff*, 609 F.3d at

1249 (citation omitted).  McIntyre's argument hinges on a nonbinding district court opinion, which denied the government's claim to restitution. *See United States v. Hirmer*, 767 F. Supp. 2d 1305, 1316 (N.D. Fla. 2011).  There, various defendants were prosecuted "based on their involvement in a scheme to fraudulently promote and sell various tax- and debt-elimination products." *Id.* at 1306.  The defendants sold promotional materials to customers which promoted anti-tax theories. *Id.* at 1307.  In *Hirmer*, the government agreed that a number of the individuals who purchased the defendants' fraudulent products were MVRA victims. *Id.* at 1310.  Instead of seeking restitution for the individual victims, the government argued that it "was impracticable and too complex" to determine the number of victims. *Id.*  Notably, at a restitution hearing the government "argued that its actual loss was not capable of determination and that restitution to the individual victims was impracticable in this case." *Id.*  The *Hirmer* court found that an "award of restitution solely to the government in this case would have improperly allowed the government alone to decide whether the non-government victims should have received restitution, thus, effectively eviscerating the requirement that the court 'ensure that all other victims receive full restitution before the United States receives any restitution.'" *Id.* at 1316 (quoting 18 U.S.C. § 3664(i)).

Here, the Court is presented with a different issue.  The Government established by a preponderance of the evidence the amount of actual loss to the SBA and Prestamos.  The record evidence contains examples of specific loss calculations as a result of McIntyre's criminal scheme.  The evidence is supported by specific citation or reference to:  (1) loan numbers; (2) transaction dates; (3) interviews; (4) loss amounts; and (5) investigation

documents.  This is not a case where the Government determined that there were victims, but sought restitution for itself with little evidence.  The Government maintained throughout that the SBA (and lender Prestamos) were victims of McIntyre's scheme. McIntyre flips the script by arguing that there may be "potential" victims that could be entitled to some form of restitution.  McIntyre did not lodge this objection until after sentencing, and neither side points to record evidence sufficient to support a finding that individuals who paid McIntyre an application fee, but were subsequently denied loans, constitute victims under the MVRA.

First, based on the record evidence, the Court cannot determine if these individuals were directly and proximately harmed by McIntyre's conduct.  The Government contends that many individuals were denied because the applicants' credit scores were too low for approval. (Doc. 114 at 46:20–23).  Other denied applicants were not charged a fee. (*See* 2021R00212-0003031).  McIntyre does not state that these victims were harmed, instead arguing that they were *potentially* harmed. (Doc. 114 at 23:9–12).  If the individuals were denied for reasons outside of McIntyre's control—it stands that they were not harmed by McIntyre's fraudulent scheme.

Second, even if the Court were to consider these individuals to be victims, it cannot ascertain on this record the alleged victims' losses.  "An award of restitution must be based on the amount of loss actually caused by the defendant's conduct." *Liss*, 265 F.3d at 1231. Put differently, "restitution is limited to 'the victim's provable actual loss.'" *United States*

*v. Lange*, 592 F.3d 902, 907 (8th Cir. 2010) (citation omitted).[21]  The record indicates that McIntyre submitted 217 false EIDL applications. (Doc. 68 at 8, para. 24).  "[W]hen McIntyre filed an EIDL application for a client, she charged [them] approximately $200." (*Id.* at 9, para. 26).  Even if these individuals were harmed, the Court cannot adequately determine the loss amounts, and neither party has established the loss amount by a preponderance of the evidence to the hypothetical victims.  The Court is not permitted on this record to hypothesize how much would be owed.  Although the record states that McIntyre charged fees, the Government has presented evidence that other applicants were not charged fees.  This inconsistent record is insufficient for the Court to order restitution.

Third, McIntyre's position that no restitution can be ordered under the *Mandatory Victims Restitution Act* is contrary to its purposes.  McIntyre attempts to use the argument that potentially more victims exist as a sword to punish the SBA and Prestamos and a shield to protect her from paying restitution.  McIntyre had adequate notice before, during, and after her sentencing that this Court would order restitution.  McIntyre, in her plea agreement explicitly agreed that restitution would be owed and acknowledged the Court's authority to order restitution.  McIntyre failed to object to the portions of the PSI where restitution was outlined with specificity.  McIntyre's efforts to skirt restitution are unavailing.  The victims of McIntyre's fraudulent scheme must be made whole—an order of restitution will follow.

---

[21] The Court here and elsewhere in this Memorandum Opinion and Order cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

**E.      Objection 5:  "Newly" Identified Victim**

On June 16, 2025, the Government informed the Court that in preparation for the restitution hearing, the Government learned that a specific PPP loan was not forgiven—meaning that the lender, Prestamos "is owed the $18,750 loan amount and $773.44 in interest, while the SBA is owed the lender fee of $2,500." (Doc. 92 at 6; *see also* doc. 92-9 at 3).  McIntyre does not dispute that Prestamos qualifies as a victim under the MVRA.  Instead, she argues that the Government failed to comply with the MVRA's timing provision that "not later than 60 days prior to the date initially set for sentencing, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution." 18 U.S.C. § 3664(d)(1); (doc. 114 at 22:19–23:1).  McIntyre contends that the Government's identification of Prestamos over 130 days after the MVRA's timeline bars restitution.  McIntyre does not cite any legal authority to support this proposition.

The Government opposes McIntyre's argument and argues that the Government "did not realize that Prestamos was the victim" until after the sentencing hearing. (Doc. 114 at 23:24–24–5).  At sentencing, the Government requested $774,774.23. (*See* doc. 68 at 21, para. 102; *see also* doc. 87 at 44:15–18).  Consistent with the Government's previous request, the Government does not ask the Court to enlarge the original order of restitution, outside an adjustment for lender fees and interest. (Doc. 114 at 25:11–26:5).  Here, the Government seeks for a portion of the sought funds to be directed to the proper party—Prestamos.  The Government argued during the restitution hearing that McIntyre "was certainly on notice of the amount that she would have to pay regarding that particular loan,

even if perhaps she was not on notice as to which entity she would have to pay it to." (*Id.* at 26:13–16).

First, the purpose of restitution is to "ensure that victims, to the greatest extent possible, are made whole for their losses." *Huff*, 609 F.3d at 1249.  Second, this Court held open the issue of restitution to determine not only the amount of restitution owed, but also to whom the restitution should be paid.  Although the Government had not specifically identified Prestamos as a "victim" during the allotted period, the Government previously sought these same funds in its sentencing memorandum, at sentencing, and during the restitution hearing.  McIntyre does not contest that Prestamos:  (1) suffered an actual loss; or (2) that Prestamos' loss was directly and proximately caused by McIntyre's conduct in the course of her scheme. *See Dickerson*, 370 F.3d at 1342–43.  The record evidence establishes that by a preponderance of the evidence the loan was linked to McIntyre's fraudulent scheme and was not forgiven—an actual loss. (*See* doc. 92-9).

Further, although the MVRA establishes various timelines for the Government and probation to act—the United States Supreme Court—albeit in a different context, has explained that missed deadlines, do not deprive the Court of the power to order restitution. *See Dolan*, 560 U.S. at 607.  This is especially true when McIntyre was on notice that she would pay restitution and she requested that the amount be held over.[22]  Because this Court "must order restitution" for actual losses directly and proximately caused by McIntyre's

---

[22] Courts, in certain circumstances, are permitted to substitute "victims" after the entry of judgment. *See United States v. Simpkins*, 2024 WL 4288077 (M.D. Fla. 2024) (granting the government's motion to substitute the SBA as victim because the "SBA [after judgment] guaranty purchased the loan from [the victim].").

conduct in the course of her scheme, the Court orders that Prestamos is entitled to restitution.

## V. CONCLUSION

For the reasons stated, it is

ORDERED as follows:

1.      McIntyre must make restitution in the total amount of $755,850.08 to the SBA, which is due immediately.  Payments are to be made to the United States District Court Clerk for distribution to the victim.  Any balance remaining at the start of supervision shall be paid at a rate of not less than $100 per month.  Interest on the restitution is waived.

2.      McIntyre must make restitution in the total amount of $19,523.44 to Prestamos, which is due immediately.  Payments are to be made to the United States District Court Clerk for distribution to the victim.  Any balance remaining at the start of supervision shall be paid at a rate of not less than $100 per month.  Interest on the restitution is waived.

3.      In accordance with 18 U.S.C. § 3664(i), Prestamos shall receive full restitution before the SBA receives any restitution.

4.      The Court will enter an amended judgment in a criminal case consistent with this Memorandum Opinion and Order. (*See* doc. 72 at 6).

DONE this 8th day of December, 2025.

          /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE